# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| VICTOR L. COLANGELO, | ) | |
| | ) | No. 15 C 6777 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Maria Valdez |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of the U.S. Social | ) | |
| Security Administration,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision
of the Commissioner of the Social Security Administration (the "Commissioner")
denying Plaintiff Victor L. Colangelo's ("Plaintiff") claim for Disability Insurance
Benefits ("DIB"). The parties have consented to the jurisdiction of the United States
Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow,
Plaintiff's motion for summary judgment [Doc. No. 28] is denied and the
Commissioner's cross-motion for summary judgment [Doc. No. 36] is granted.

## BACKGROUND

### I.    Procedural History

Plaintiff filed an application for DIB on September 27, 2011, alleging a
disability onset date of July 7, 2009, due to post traumatic stress disorder ("PTSD"),
depression, stress disorder, anxiety, and carpal tunnel syndrome. (R. 131–32, 155.)

---

[1] Nancy A. Berryhill is substituted for her predecessor, Carolyn W. Colvin, pursuant to
Federal Rule of Civil Procedure 25(d).

His application was denied initially on March 8, 2012, and again at the reconsideration stage on June 21, 2012. (R. 68–69.) Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), which was held on October 21, 2013. (R. 30–67, 85.) Plaintiff appeared at the hearing with his attorney and offered testimony. (R. 30–67.) A vocational expert (the "VE") and two medical experts also appeared and offered testimony. (*Id.*) On April 23, 2014, the ALJ issued an unfavorable written decision. (R. 6–29.) The Appeals Council ("AC") denied review on June 25, 2015, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Herron v. Shalala*, 19 F.3d 329, 332 (7th Cir. 1994); (R. 1–4.)

## II.    Factual Background[2]

Plaintiff was born on October 2, 1953. (R. 131.) As of the date of his application, he had graduated high school, served in the military, and attained age fifty-seven. (R. 131–32, 156.) Between 1986 and 2009, he worked as a stocker, order picker, night manager, maintenance technician, union laborer, and a hospital construction installer. (R. 156.) He reported that he had not been employed since he was fired from his installer position on July 7, 2009. (R. 155.)

### A. Medical Evidence

Plaintiff's medical evidence reveals several surgical histories which are not available in his record, including bilateral carpal tunnel release surgery in 1986 and bilateral knee arthroscopies in the 1990s. (R. 277.)  His record likewise contains

---

[2] The following facts from the parties' briefs are undisputed unless otherwise noted.

references to several bodily traumas including left eye trauma in 1962, a stabbed throat in 1971, loss of his right ear in 1984, and a dental extraction. (R. 277, 450.)

After ten years without medical treatment, Plaintiff presented to Dr. Jas Brar, M.D., in June 2011 to establish care. (R. 458–62.) Dr. Brar's review of Plaintiff's systems revealed several problems including obesity[3], PTSD, anxiety, depression, and mood changes. (R. 459–60.) Dr. Brar started Plaintiff on Wellbutrin for his depression; (R. 460) however, due to Plaintiff's non-compliance with his medication, (R. 579, 584) he was switched to Valium shortly thereafter. (R. 464.) By August 2011, Plaintiff had shown improvement on Valium, but Dr. Brar still characterized him as depressed and noted he was positive for labile mood.[4] (R. 454–55.)

In August 2011, two months after Plaintiff established care with Dr. Brar, he began concurrent treatment at DuPage County Health Department ("DCHD") with Dr. Jinger Hoop, M.D., Licensed Practioner of the Healing Arts, for anger management therapy. (R. 287.) Dr. Hoop conducted several psychiatric evaluations where she reviewed Plaintiff's symptoms and problematic history before ultimately diagnosing him with mood disorder. (R. 334–46.) As a result of his therapy and medication, Plaintiff demonstrated a significant decrease in his anger between August 2011 and November 2011. (R. 311–15.)

On October 11, 2011, Plaintiff presented to Dr. James Stankiewicz, M.D., for a nasal injury that had occurred during a fight over a month prior. (R. 277.)

---

[3]    On June 2, 2011, Plaintiff was 5' 11" and his weight was recorded as 240 pounds. (R. 459.)

[4]    Alternatively stated, Plaintiff's mood was unstable. *Dorland's Medical Dictionary*, http://www.dorlands.com (last visited Jul. 11, 2017).

Following the incident, Plaintiff had experienced sharp, radiating facial pain accompanied by numbness and tingling. (*Id.*) Dr. Stankiewicz diagnosed Plaintiff with a severe nasal fracture and deviated septum, which he treated with surgical intervention, including a septoplasty and an open reduction nasal fracture. (R. 277–282.)

Four months later, Plaintiff completed a Function Report issued by the Social Security Administration where he described the activities he could still perform despite his limitations. (R. 176–83.) In his report Plaintiff stated that he continued to go to the store, clean, drive, and attend his son's basketball games. (*Id.*)

Along with the foregoing evidence, Plaintiff's record contains two Illinois Requests for Medical Advice completed by several reviewing physician consultants at the behest of the Disability Determination Services ("DDS"). At both the initial and reconsideration level, the DDS consultants determined that Plaintiff's record contained insufficient information regarding his physical impairments to conduct a review. (R. 347–49; 383–85.) Initially, it was determined that Plaintiff's available evidence did not support a persistent or debilitating mental impairment. (R. 351–63.) However, upon second review, one DDS consultant opined that Plaintiff exhibited a medically determinable mental impairment due to his mood disorder. (R. 365–81.) As a result of Plaintiff's mood disorder, as well as his history of conflictual relationships, the consultant opined that Plaintiff would have a "marked" limitation in social functioning and recommended limiting him to work

where there were limited demands for close supervision or contact with others. (R. 375–81.)

## B. <u>Plaintiff's Testimony</u>

Plaintiff testified that he tries his best to stay at home to avoid people and conflicts because on several prior occasions he has gotten into public arguments and fights. (R. 53–57.) Plaintiff additionally testified regarding the side effects of the medications he was prescribed during the material period. He reported that he experienced loss of memory as well as a loss of control over bodily functions. (R. 50.) He has since changed medications. (R. 51.)

## C. <u>Expert Testimony</u>

### i. Dr. Slodki

Medical expert, Dr. Slodki, was present and testified at Plaintiff's administrative hearing. Dr. Slokdi opined that the combination of Plaintiff's impairments, including his nasal fracture with closed reduction, stab wound of the neck, dental extraction, open reduction and nasal septoplasty for a deviated septum, carpal tunnel, knee surgery, and obesity had a "more than limited" impact on his ability to perform work-related activities, but due to the lack of documented evidence regarding Plaintiff's physical impairments, they resulted in no exertional limitations during the material period at issue. (R. 35–36.)

### ii. Dr. Ellen Rozenfeld

Medical expert, Dr. Ellen Rozenfeld, (the "ME" or "Dr. Rozenfeld") was also present and testified at Plaintiff's administrative hearing. The ME opined that

Plaintiff had medically determinable mental impairments including, *inter alia*, depressive disorder, PTSD, and mood disorder, which either singly or in combination had more than a minimal effect on his ability to perform work-related activities.[5] (R. 39–40.) She reported that his impairments resulted in only mild limitations on his activities of daily living because he retained the ability to attend his son's basketball games, go out in public alone, shop, and drive. (R. 40–41.) In contrast, she noted he had moderate limitations in social functioning due to his irritability, problematic interactions, anger management, and avoidance behavior. (*Id.*)

Additionally, Dr. Rozenfeld pointed out that Plaintiff's records from DCHD revealed improvement in his anger management between August 2011 and November 2011. (R. 41.) She explained that he had only mild limitations in concentration, persistence, or pace due to his demonstrated ability to concentrate during his activities of daily living. (*Id.*) Dr. Rozenfeld then opined that Plaintiff retained the ability to understand, remember and carry out simple and detailed instructions, except he must avoid sustained general public contact, avoided joint and shared tasks with co-workers, engage in occasional supervisory contact, and manage only routine work setting changes. (R. 41–42.)

### iii. Vocational Expert's Testimony

Also present at Plaintiff's administrative hearing was the VE, Brian Harmon. The ALJ first asked the VE to identify Plaintiff's past relevant work. (R. 64.) The

---

[5] Dr. Brar's treatment records reveal that Plaintiff reported smoking cigarettes and using marijuana. (R. 462.) Dr. Rozenfeld identified "substance abuse" as one of Plaintiff's medically determinable impairments. (R. 40.)

VE testified that Plaintiff had worked as a construction worker I, maintenance repairer, and laborer. (R. 64–65.) The ALJ then asked the VE if Plaintiff could meet the mental demands of any of his past relevant work based on the restrictions articulated by the ME. (R. 65.) The VE explained that the ME's limitations would preclude employment for all three positions. (*Id.*) Next, the ALJ asked the VE to opine whether there were other jobs available in the national economy that an individual of Plaintiff's same age, education, vocational training, and with the same limitations provided by the ME, could perform. (*Id.*) The VE responded that such an individual could perform work as a kitchen helper, hand packager, and laundry worker. (R. 66.)

On cross-examination, Plaintiff, through his counsel, asked the VE whether the jobs he had listed would remain available to an individual who engaged in loud, obscene, and possibly physical altercations on the job once a month, to which the VE responded negatively. (R. 66.) Plaintiff's counsel then asked the VE if the hypothetical individual would remain employable if he was off task more than fifteen percent of the day, or absent from work more than one and a half days per month. (R. 66–67.) The VE opined that such an individual would not be employable. (R. 67.)

### D. **ALJ Decision**

On April 23, 2014, the ALJ issued an unfavorable written determination finding Plaintiff was not disabled between July 7, 2009, his alleged onset date, and September 30, 2011, his date of last insured status. (R. 9–24.) At step one, the ALJ

determined that Plaintiff had not engaged in substantial gainful activity ("SGA") during the period relevant to his claim. (R. 12.) At step two, the ALJ found that Plaintiff had a severe impairment in social functioning during his insured period. (R. 15.) At step three, the ALJ determined that prior to September 30, 2011, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. 20 C.F.R. Part 404, Subpart P, App'x 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 416.920(d), 416.925 and 416.926). (R. 15–16.)[6]

Before step four, the ALJ found that prior to September 30, 2011, Plaintiff had the residual functional capacity ("RFC") to perform a range of unskilled work, except he could not understand and remember complex instructions, carry out detailed or complex tasks or simple tasks requiring more than occasional changes in routine, sustain interaction with the public, have more than occasional contact with supervisors, or engage in teamwork with coworkers. (R. 16–22.) At step four, the ALJ concluded that Plaintiff was not capable of performing his past relevant work. (R. 22.) Finally, at step five, the ALJ found that prior to September 30, 2011, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. (R. 23.) Specifically, the ALJ found that Plaintiff could have worked as a kitchen helper, hand packager, and laundry worker. (*Id.*) Because of

---

[6] In January 2017, the Social Security Administration published amendments to the regulations regarding 20 C.F.R. Parts 404 and 416. Revisions to the Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 11, 5844–84 (Jan. 18, 2017), available at https://www.gpo.gov/fdsys/pkg/FR-2017-01-18/pdf/2017-00455.pdf#page29. Because these amendments only apply to claims filed on or after March 27, 2017, all references to the regulations and rulings in this opinion refer to the prior version.

this determination, the ALJ found that Plaintiff had not been disabled during the material period at issue. (*Id.*)

## DISCUSSION

### I. ALJ LEGAL STANDARD

Under the Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and; (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step 3, precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at steps 1–4. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II.    JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "reasonable minds could differ" as long as "the decision is adequately supported.") (internal citation omitted).

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a plaintiff, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex*

*rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning . . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron*, 19 F.3d at 333; *see Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014) ("This 'sound-bite' approach to record evaluation is an impermissible methodology for evaluating the evidence.").

## III. ANALYSIS

Plaintiff alleges that the ALJ's decision should be remanded because: (1) his RFC determination was erroneous; (2) he improperly evaluated Plaintiff's credibility; and (3) he erred at step five of the sequential evaluation process. For the reasons that follow, the Court finds that the ALJ did not err in any of these respects.

### A. <u>The ALJ's RFC Determination was Supported by Substantial Evidence</u>

A plaintiff's RFC is an administrative assessment of what work-related activities an individual can perform despite his limitations. 20 C.F.R. § 404.1545;

Social Security Ruling ("SSR") 96-8p; *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). In assessing a plaintiff's RFC, the ALJ must consider both the medical and nonmedical evidence in the record. *Id.* Additionally, the ALJ's RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts. SSR 96-8p; *see also Briscoe*, 425 F.3d at 352.

Plaintiff first contends that the ALJ's RFC discussion was not a functional assessment of Plaintiff's work-related abilities, but rather "a lengthy and laborious description" of Plaintiff's medical evidence. (Pl.'s Br. at 6.) In particular, he alleges that the ALJ failed to provide an RFC assessment at all when he determined that Plaintiff was capable of "a range of unskilled work." (Pl.'s Br. at 6.) This argument is puzzling to the Court as a full reading of the ALJ's discussion reveals that he additionally determined Plaintiff:

> [H]ad the capacity to perform the exertional and nonexertional requirements of work except for understanding and remembering complex instructions, carrying out detailed or complex tasks, or simple tasks requiring more than occasional changes in routine, sustained interaction with the public, and more than occasional contact with supervisors, or team work with coworkers.

(R. 22.) Thus, contrary to Plaintiff's contentions, the ALJ submitted the medical evidence in the record to a functional assessment that resulted in an RFC determination.

Next, Plaintiff urges this Court to reverse the ALJ's decision based on what Plaintiff asserts was the ALJ's faulty evaluation of his treating physicians' opinions. (Pl.'s Br. at 6.) A treating physician's opinion is entitled to controlling weight if it is

"well-supported" and "not inconsistent with other substantial evidence" of record. 20 C.F.R. § 416.927; *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). Even if a treating physician's opinion is not given controlling weight, the ALJ must still determine what value the assessment does merit and explain his determination, considering "the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the opinion." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)(2)); *Scott*, 647 F.3d at 740.

Plaintiff is correct that the ALJ erred when he failed to articulate the weight he accorded to Dr. Brar and Dr. Hoop.[8] Here, the ALJ's discussion is void of any assessment regarding the appropriate weight to be accorded to the two treating sources. 20 C.F.R. § 404.1527. Yet, the Court does not need to remand this case despite this error, "if it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record." *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010).

The Court recognizes that the evidence establishes a treating relationship between Plaintiff and each doctor respectively; however, neither treating physician offered an opinion regarding Plaintiff's functional capacities during the relevant period. For example, although Dr. Brar consistently diagnosed Plaintiff with depression and mood disorder, his treatment notes do not indicate whether those

---

[8] In his brief, Plaintiff intimates that Plaintiff visited several psychologists at DCHD. Upon review of the record we find that Dr. Hoop is the only medical source, as defined by the regulations, which Plaintiff presented to at DCHD. Plaintiff's record reveals reports from two Licensed Clinical Social Workers("LCSWs), however, a LCSW is not a source who can provide evidence to establish an impairment under the regulations. 20 C.F.R. § 404.1513.

diagnoses would result work-related limitations. Similarly, Dr. Hoop diagnosed Plaintiff with mood disorder, but never extend that finding to an evaluation of Plaintiff's functional capacities. The ALJ himself addresses this deficiency in his decision, noting that generally the opinions of examining physicians are entitled to the most evidentiary weight, but that the present record "does not contain a[n] [RFC determination] from any examining clinician." (R. 20.) Because neither of Plaintiff's examining sources gave opinions as to his functional limitations, we are confident that no reasonable ALJ on remand would reach a different conclusion regarding Plaintiff's RFC. Accordingly, we find that the ALJ's failure to weigh their opinions was harmless error.

Finally, Plaintiff alleges that the ALJ "played doctor" because he "utilize[d] his own 'hunches' to bring about medical conclusions." (Pl.'s Br. 6–7.) To illustrate his point, Plaintiff highlights one instance in the ALJ's decision where he stated that Plaintiff "did not exhibit any obvious cognitive impairment at the hearing." (R. 18.) According to Plaintiff, this conclusion is particularly harmful to the ALJ's final RFC assessment because his mental impairments do not necessarily manifest themselves cognitively, thus the ALJ could not rely on his observation when determining his RFC. (Pl.'s Br. at 6–7.)

In essence, Plaintiff asks the Court to overturn the ALJ's determination, based on a single sentence he extracted from the ALJ's seven page RFC discussion. This argument ignores the portions of the ALJ's decision where he fully examined

Plaintiff's medical records, the expert testimony, and the reports of the DDS consultants explaining how each informed his RFC determination.

Notably, the Seventh Circuit has found that a ME's testimony, buttressed by the opinions of state agency consultants, may provide the basis for the ALJ's RFC finding. *See White v. Barnhart*, 415 F.3d 654, 659 (7th Cir. 2005). In addition to inconsistencies in the objective medical evidence, the ALJ here relied on the testimony of Dr. Ellen Rozenfeld, who opined that Plaintiff retained the ability to understand, remember, and carry out simple instructions, did best in situations without sustained interaction with the general public, could not perform joint or shared tasks with co-workers, could adapt to routine work changes, and worked best with only occasional supervisory contact. (R. 42.)

Likewise, the ALJ relied on the opinion of Plaintiff's second reviewing consultative physician who found that he suffered from a social functioning impairment as a result of his mood disorder. (R. 20.) There, the examiner opined that Plaintiff was capable of working in a setting with minimal demands for close supervision or contact with others—a finding wholly consistent with Dr. Rozenfeld's opinion and the ALJ's ultimate RFC. Therefore, contrary to Plaintiff's contention, the ALJ did not improperly assume the role of "doctor", but rather grounded his RFC determination in the relevant evidence of record.

**B. The ALJ's Credibility Determination was not Patently Wrong**

An ALJ's credibility determination is granted substantial deference by a reviewing Court unless it is "patently wrong," and not supported by the record.

*Schmidt v. Astrue*, 496 F.3d 833, 843 (7th Cir. 2007); *Jen v. Barnhart*, 347 F.3d 209, 213 (7th Cir. 2003). The ALJ must give specific reasons for discrediting a claimant's testimony, and "[t]hose reasons must be supported by record evidence and must be 'sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.'" *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539–40 (7th Cir. 2003) (quoting *Zurawski*, 245 F.3d at 887–88). The lack of objective evidence is not by itself reason to find a claimant's testimony to be incredible. *See Schmdit v. Barnhart*, 395 F.3d 737, 746–47 (7th Cir. 2005).

In this case, Plaintiff argues that the ALJ erred in finding him not credible. (Pl.'s Br. at 7.) In support of his argument, Plaintiff points to SSR 96-7p, which requires ALJs "be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p (1996 WL 374186) at *4 (superseded by SSR 16-3p).[9]

However, contrary to Plaintiff's assertions otherwise, the ALJ explained the weight he accorded to Plaintiff's testimony, stating he "d[id] not credit [Plaintiff's]

---

[9]  The Court notes that last year, the Social Security Administration updated its guidance about evaluating symptoms in disability claims. *See* SSR 16-3p, 2016 WL 1119029 (effective Mar. 28, 2016). The new ruling eliminates the term "credibility" from the Administration's sub-regulatory policies to "clarify that subjective symptom evaluation is not an examination of the individual's character." *Id.* at *1. Though SSR 16-3p post-dates the ALJ hearing in this case, the application of a new regulation to matters on appeal is appropriate where the new regulation is a clarification of, rather than a change to, existing law. *Pope v. Shalala*, 998 F.2d 473, 482-483 (7th Cir. 1993) (overruled on other grounds by *Johnson v. Apfel*, 189 F.3d 561 (7th Cir. 1999)). SSR 16-3p provides that: "[t]he determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p at *9.

allegations concerning the frequency and duration of intense symptoms associated with his established impairments." (R. 19.) By way of explanation, the ALJ reasoned that Plaintiff's testimony stating he "stayed away from people to avoid conflicts," was not so pervasive as to render him unable to perform activities of daily livings such as "go[ing] out in public, shop, visit[ing] his mother, or attend[ing] his son's basketball games." (*Id.*) In addition, the ALJ engaged in a lengthy discussion of Plaintiff's medical record evidence. (*Id.*) The ALJ's discussion revealed inconsistencies between the Plaintiff's testimony regarding the side effects of his medications (memory loss and loss of bodily functions), and the objective medical evidence, which did not document such significant and persistent side effects. (R. 17.) Finally, the ALJ explained that Plaintiff's symptoms were not a severe as he alleged due to documented evidence which revealed he had learned coping strategies by November 2011 which helped him maintain his temper when he got angry. (R. 18.)

Because the ALJ explicitly assigned a weight to Plaintiff's statements, and proceeded to explain the reasons for that assignment citing specific examples in the record, his credibility determination was not patently wrong and therefore will not be disturbed by the Court. Plaintiff has failed to show that the ALJ's discussion "rob[bed Plaintiff] and the Court of the requisite supporting evidence to reach [the ALJ's] conclusion." (Pl.'s Br. at 7.)

**C.    The    ALJ's    Step    Five    Determination    was    Proper.**

Finally, Plaintiff argues that the RFC hypotheticals the ALJ presented to the

VE were incomplete because they did not account for his obesity or mental limitations in concentration and motivation. (Pl.'s Br. at 9.) Moreover, Plaintiff asserts the ALJ mistakenly relied on the testimony of the VE without requiring proof of his sources of information. (*Id.*)[10]

Plaintiff seems to take issue with the way the ALJ framed his RFC hypothetical to the VE, specifically because he did not explicitly refer to all of his non-exertional impairments (obesity, concentration, and motivation). However, the Seventh Circuit only requires that the hypothetical question "be supported by the medical evidence of record." *Cass v. Shalala*, 8 F.3d 552, 555–56 (7th Cir. 1993) (citing *Erhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 540 (7th Cir. 1992)) (internal citation omitted).

Here, the ALJ's hypothetical question appears to have adequately reflected Plaintiff's limitations. The ALJ asked the VE to consider the employability of someone of Plaintiff's same age, education, and work experience who was limited by the restrictions identified by Dr. Rozenfeld (the ability to understand, remember, and carry out simple instructions; cannot have sustained interaction with the general public; no joint or shared tasks co-workers; no ability to adapt to routine work changes; and work with only occasional supervisory contact). Plaintiff first complains that these findings failed to encompass limitations related to his obesity.

---

[10] In addition to the foregoing arguments, Plaintiff contends that the ALJ mistakenly allowed the VE to make his RFC determination, expressing that it is the ALJ's responsibility to assess what work-related functions an individual can still perform despite his impairments. (Pl.'s Br. at 8.) However, these assertions are analogous to the Plaintiff's RFC argument above, and the Court does not address them here.

However, the record lacks evidence that Plaintiff's obesity impacted his RFC, thus the ALJ was not required to include it in his hypothetical questions. *Steele*, 290 F.3d at 942 (stating that hypothetical questions to the VE need only account for limitations supported by the medical evidence of record) (citations omitted). Moreover, Plaintiff did not meet his burden articulate how his obesity would exacerbate his social interaction impairment and further limit his functional abilities. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). Similarly, the ALJ properly excluded Plaintiff's difficulties in concentration and motivation because no medical source opined that that his difficulties would result in a work-related limitation. *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009) (finding a hypothetical question "must account for *documented* limitations of 'concentration, persistence, or pace,'") (collecting cases) (emphasis added). Therefore, the VE's testimony constituted substantial evidence upon which the ALJ was entitled to rely, despite any deficiencies in his hypothetical questions.

Furthermore, the VE identified the DOT as the source of information for his testimony regarding the jobs he identified; therefore, Plaintiff's concern that the ALJ did not inquire into the source of his responses is misguided, particularly in light of the fact that Plaintiff did not challenge the foundation of the expert's testimony at the time of the administrative hearing. *See Overman v. Astrue*, 546 F.3d 456, 465 (7th Cir. 2008) (stating that an ALJ was entitled to rely on a VE's testimony when Plaintiff failed to challenge its foundation at the administrative hearing).

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is denied and the Commissioner's cross-motion for summary judgment is granted.

**SO ORDERED.**                           **ENTERED:**

*Maria Valdez*

**DATE:**      **August 11, 2017**        _____
                                          **HON. MARIA VALDEZ**
                                          **United States Magistrate**